## THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**ELIZABETH ALEXANDER,**

　　　　　　Plaintiff,

　　　vs.　　　　　　　　　　　　　　No. 1:07-cv-0230 MCA/LCS

**STATE OF NEW MEXICO
VOCATIONAL REHABILITATION,
GARY BEENE, SHIRLEY
GONZALES, LILY VEGA, and THAD
BROWN,**

　　　　　　Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendants' Motion and Incorporated Memorandum to Dismiss* [Doc. 26], filed October 1, 2007, and Plaintiff's *Request for Extension for Response* [Doc. 29], filed October 23, 2007.  Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court concludes that Defendants' Motion should be **GRANTED** in part and **DENIED** in part.  Plaintiff's request to extend the deadline to file a response is **GRANTED** *nunc pro tunc*.

## I.　　BACKGROUND

Plaintiff appears *pro se.*  She filed her "Cause of Motion Discrimination Violations of Americans with Disabilities Act, Violations of Age Discrimination Act, Violation of the Individuals with Disabilities Education Act (For Declaratory Judgement)" on March 7, 2007. [Doc. 1] (referred to hereafter as the "Complaint")].  The Court assumes for purposes of this

1

motion that Defendant State of New Mexico [Division of] Vocational Rehabilitation ("DVR") is a state agency and that the individual defendants are its employees.  Defendant DVR is reportedly a state entity whose mission "is to encourage and assist the efforts of New Mexicans with disabilities to reach their goals for working and living in their communities."[1]

The Complaint is presented on the standard form for a section 1983 civil rights complaint that is available on the Court's website.  [Doc. 1 at 6–12.]  As reflected in the title and elsewhere in the Complaint, Plaintiff brings claims under: (1) the Americans with Disabilities Act; (2) the Rehabilitation Act; (3) the Age Discrimination Act; and (4) the Individuals with Disabilities Education Act.

Plaintiff claims that she is disabled by a brain injury.  [Doc. 1 at 8.]  Under the "Nature of Case" heading of the Complaint, Plaintiff alleges that she applied to Defendants for services and expressed to them her desire to receive training or college education, but her requests were, for the most part, ignored.  [Id. at 9.]  Specifically, she states that she sought assistance from the Defendants, and that they have "attempted to not send [her] to a rehabilitation program consisting of re-training or college and they have subjected [her] to [a]ll manner of tactics to achieve this...."  [Id. at 8.]  According to Plaintiff, she met with a psychiatrist, as per Defendants' instructions, and was evaluated as being capable of taking a college program.  [Id.]  Defendants nevertheless, Plaintiff complains, rated her as severely disabled, thereby restricting her access to certain training programs and impeding her "right to be counseled only by a person of like faith."  [Id.]  She alleges that the restrictive disability

---

[1]From http://www.dvrgetsjobs.com/DVRInternet/index/index.aspx.

rating she received is not based solely on her brain injury, but improperly includes ailments such as diabetes and hypertension that can be controlled with diet and weight control.  [Id.]

She further alleges that she wants to work and receive training, but Defendants refused to provide her with "needed assisted devices."  [Doc. 1 at 8.]  She also alleges that she was intimidated into signing up for "a trial work experience and told at the end of the work experience that if [she] didn't 'succeed' [her] case would be closed."  [Id. at 9.]

Plaintiff's Complaint includes three attachments on which she lists numerous documents, letters, emails, and faxes apparently generated during the course of her interactions with the Defendants.  [Doc. 1 at 2–5.]  Each item listed is identified by date and a short description, often specifying both the sender and the recipient.  [Id.]

Finally, under the heading "Request for Relief," Plaintiff states that she believes she is entitled to:

> The assisted devices reported included with a cost increase due to inflation [$] 6,500 (included training awarded for instruction on said devices)
>
> The 10,000 dollar/the amount of their grant to be applied to the Commercial business plan included with budget I have been struggling through this process with the devices and I am insulted because I can't do it quickly without the devices
>
> And [$] 10,000 for pain and suffering.

[Doc. 1 at 11.]

Defendants move to dismiss Plaintiff's Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## II.    LEGAL STANDARDS

Until recently, a motion to dismiss for failure to state a claim was granted only if it appeared beyond doubt that the plaintiff could prove "no set of facts in support of his claim which would entitle him to relief." *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005) (quotation marks omitted)(quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S. Ct. 99 (1957)).  In a case decided several months before this motion was filed, however, the Supreme Court concluded that this oft-quoted language has "earned its retirement." *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1969 (2007).  *Conley*, according to the Supreme Court, "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly*, 127 S.Ct. at 1969.

In order to survive a motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quotation marks omitted) (quoting *Twombly*, 127 S.Ct. at 1969).  While a complaint attacked under Rule 12(b)(6) does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of the entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964–65 (citations omitted).  The complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of the alleged conduct.  *See Twombly*, 127 S.Ct. at 1965.

The Court still accepts as true all well-plead allegations, and views them in the light

4

most favorable to the plaintiff. *Ridge at Red Hawk, LLC*, 493 F.3d at 1177. "Well-plead," however, means that the allegations are "plausible, non-conclusory, and non-speculative." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The factual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 127 S.Ct. at 1965. Overall, the complaint must "possess enough heft" to show that the pleader is entitled to relief. *Twombly*, 127 S.Ct. at 1965–66.

Even after *Twombly*, it remains true that a document filed pro se is to be liberally construed, however inartfully drafted, and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, __ U.S.__, 127 S.Ct. 2197, 2200 (2007) (citations and quotation marks omitted). Furthermore, "[a]ll pleadings shall be so construed as to do substantial justice." *Erickson*, 127 S.Ct. at 2200 (quoting Fed.R.Civ.P. 8(f) (quotation marks omitted)). "[I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## III.    ANALYSIS

Defendants move under Rule 12(b)(6) to dismiss Plaintiff's Complaint with prejudice. [Doc. 26.] Defendants direct their attack at the Complaint's supposed lack of coherent allegations and purported violation of Rule 8. As discussed further below, Defendants reserved their more substantive legal arguments for the reply brief.

The argument Defendants set forth in their motion is that Plaintiff's Complaint is a "hodgepodge" of "incoherent allegations."  They assert that "Plaintiff fails to allege sufficient facts to demonstrate a cognizable legal claim for violation of her civil rights against the [defendant] state agency or any of the individually named Defendants."  [Doc. 26 at 2.] They further assert that Plaintiff's Complaint merely reflects her "dissatisfaction with the counseling services she received, but is not a legally supported claim for retaliation or discrimination under the color of law."  [Id. at 4.]  Defendants also argue that Plaintiff's Complaint violates Rule 8 of the Federal Rules of Civil Procedure in that it is not organized into paragraphs, is a "hodgepodge of narrative statements, and it is difficult to ascertain what claims she is alleging against which Defendants, based upon what facts."  [Id. at 2–3.]

In response, Plaintiff asserts that her Complaint provides a "chronology of events as they occurred based on facts and correspondence that she received during the process that she was directed to complete through the Department of Vocational Rehabilitation."  [Doc. 30 at 1.]  She argues that "Defendants are discriminating against her by denying her the devices needed for rehabilitation because of her disability and age."  [Id. at 2.]  She also claims that Defendants have failed to comply with a "Mediation Agreement" to provide services and devices.  [Id. at 1–2.]

The Court considers each of Plaintiff's claims below.

## A.    Americans with Disabilities Act ("ADA")

Plaintiff brings a claim under Title II of the ADA.  [Doc. 1 at 8.]  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be

excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II, the Plaintiff must allege that (1) she is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability. *Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1193 (10th Cir. 2007).

### 1.     *Qualified Individual with a Disability*

A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. 12131(2). A "disability" within the meaning of the ADA is "a physical or mental impairment that substantially limits one or more of the major life activities" of an individual. 42 U.S.C. 12102(2)(A).

Plaintiff has alleged that she has a brain injury and that she provided "proof of brain injury disability" to Defendant DVR. [Doc. 1 at 2.] Although Plaintiff does not specifically state that her disability "substantially limits one or more of the major life activities," it can be reasonably inferred from the Complaint as a whole that Plaintiff asserts she is significantly restricted in her abilities, which is why she sought assistance from the Defendants. The

7

Complaint also asserts that Plaintiff believes she is qualified to participate in training or vocational programs offered by the Defendants, and that she is also qualified to receive "assisted devices." She states that she was screened by a psychiatrist as Defendants required, and was told that "[she] can do a college program or small business[.]" [Id. at 8.] She also alleges that Defendants failed to provide the devices she requires "even after the findings of an impartial hearing officer." [Id. at 10.] The Court concludes that these allegations are sufficient to satisfy the first element of Plaintiff's ADA claim.

### 2.   *Exclusion from programs and services, or denial of benefits*

The Complaint also clearly alleges that Plaintiff was excluded from a vocational training program and was denied benefits. She claims that Defendants gave her a rating that exaggerates the severity of her disability, thereby precluding her from participating in various programs. [Doc. 1 at 8.] These allegations are sufficient to satisfy the second element of Plaintiff's ADA claim.

### 3.   *Discrimination by reason of disability*

Liberally construed, the Complaint also alleges that the exclusion and denial of benefits was by reason of disability. Plaintiff claims that she wants to work, but Defendants denied her devices and training she needs to cope with her disability, and instead encouraged her to "enjoy[] the government check...." [Doc. 1 at 8.] She also claims that Defendants gave her a rating that exaggerates the severity of her disability, thereby precluding her from participating in various programs. [Id. at 8.] She further claims that Defendants "intimidated" and "insulted" because her disability inhibits her progress. [Id. at 9, 11.]

8

These allegations are sufficient to satisfy the second element of Plaintiff's ADA claim.

The Court concludes that the Complaint adequately states a claim under the ADA. Accordingly, Defendants' motion will be denied with respect to this claim.

### B.    Rehabilitation Act, 29 U.S.C. §§ 701–796l ("RA")

Plaintiff also brings a claim under the RA.  The elements of a claim under the RA are similar to a claim under the ADA.  Section 504 of the RA states: "No otherwise qualified individual with a disability...shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...."  29 U.S.C. § 794(a).  A prima facie case under Section 504 requires proof: (1) that the plaintiff has a disability; (2) that the plaintiff is otherwise qualified to participate in the program; (3) that the program receives federal money; and (4) the program discriminated against the plaintiff.  *Hollonbeck v. U.S. Olympic Comm.*, 513 F.3d 1191, 1198 (10th Cir. 2008) (Holloway, J., dissenting) (citing *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1151 (10th Cir. 1999)).

The Complaint adequately alleges all four elements.   As discussed above in connection with the ADA claim, Plaintiff alleges that she is disabled and that she was denied access to programs in which she was qualified to participate, for example, programs to receive "assisted devices," rehabilitation, and job training.  [Doc. 1 at 2, 3, 5, 8, 9, 10.]

In their reply brief, Defendants argue that the Complaint fails to allege the third element—that the program receives federal funds. Defendants are mistaken. The Complaint plainly makes an allegation of federal funding.  Plaintiff states that she complained to the

Governor's Office that she "was not receiving assistance from C.A.P. who receives Federal funding to help Disabled clients with D.V.R." [Doc. 1 at 3.] Although the Complaint does not define the acronym "C.A.P.", it is clear that Plaintiff asserts she was denied assistance from a program that receives federal funding and that is affiliated with Defendant DVR.

With respect to the fourth element, Defendants argue (in their reply brief) that the Complaint fails to allege that Defendants *intentionally* discriminated against her. However, as already noted, the Complaint alleges that Plaintiff was discriminated against by reason of her disability. Furthermore, in the context of the RA, intentional discrimination does not require personal animosity or ill will. *Powers*, 184 F.3d at 1153 (quoting *Bartlett v. New York State Bd. of Law Examiners*, 156 F.3d 321, 331 (2d Cir. 1998)). Rather, "intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Powers*, 184 F.3d at 1153.

The Court concludes that the allegations in the Complaint are sufficient to state a claim that the discrimination was intentional. In any event, Plaintiff need not allege intentional discrimination to survive a motion to dismiss. Intentional conduct is not an element of a prima facie case, but simply a requirement to obtain compensatory damages. *Powers*, 184 F.3d at 1152 (citing *Pushkin v. Regents of Univ. of Colo.*, 658 F.2d 1372, 1385 (10th Cir. 1981)).

Defendants' motion is denied with respect to Plaintiff's Rehabilitation Act claim.

**C.     Age Discrimination Act**

10

Plaintiff also brings a claim under the "Age Discrimination Act," contending that she was discriminated against on the basis of age.  [Doc. 1–2.]  Though the Complaint does not include a specific statutory reference, the Court construes the Complaint as attempting to allege a claim under the Age Discrimination Act of 1975, 42 U.S.C. §§ 6101–6107, not the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq.

The purpose of the Age Discrimination Act is "to prohibit discrimination on the basis of age in programs or activities receiving Federal financial assistance."  42 U.S.C. § 6101. The Age Discrimination Act further provides that "no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance."  42 U.S.C. § 6102.

In their reply brief, Defendants assert, in conclusory fashion, that "Plaintiff has failed to state any allegations that she was discriminated on the basis of her age."  [Doc. 31 at 6.] To the contrary, Plaintiff alleges that Defendants may have a "pattern to turn away 'older disabled folks'" and that she was told Defendants feared she "could get hit by another 'stroke'...6 months from now."  [Doc. 1 at 8.]

Nevertheless, it appears that jurisdiction over the Age Discrimination Act claim is lacking.[2]  Before it can proceed on the merits, the Court has a duty to independently satisfy

---

[2] It has been questioned whether the Age Discrimination Act provides a private right of action for money damages.  *Wieker v. Mesa County Valley Sch. Dist. #51*, No. 05-cv-806 WYD-CBS, 2007 WL 595629, *9 (D. Colo. Feb. 21, 2007).  The Court does not reach this question.  However, even if it were assumed that Plaintiff could not recover money damages, her Complaint arguably sets forth a claim for injunctive relief.  Suits to "enjoin a violation of [the Age Discrimination Act]" are expressly recognized.

itself that subject matter jurisdiction exists. *Lance v. Coffman*, __ U.S. __, 127 S.Ct. 1194, 1196 (2007); *Kennedy v. Lubar*, 273 F.3d 1293, 1301 n.10 (10th Cir. 2001).

There is a dearth of authority on the Age Discrimination Act in the Tenth Circuit; however, the text of the statute reflects two requirements that must be met before a claim can be brought in federal court. First, an "interested person" bringing an action "shall give notice by registered mail not less than 30 days prior to the commencement of that action to the Secretary of Health and Human Services, the Attorney General of the United States, and the person against whom the action is directed." 42 U.S.C. § 6104(e)(1). The notice "shall state the nature of the alleged violation, the relief to be requested, the court in which the action will be brought, and whether or not attorney's fees are being demanded in the event the plaintiff prevails." 42 U.S.C. § 6104(e)(2).

Second, before bringing an action under the Age Discrimination Act, the plaintiff must exhaust administrative remedies. 42 U.S.C. § 6104(e)(2), (f); 45 C.F.R. § 90.50. Administrative remedies are exhausted if 180 days have elapsed since the complainant filed a complaint before the relevant federal funding agency and the agency has made no finding, or alternatively, the agency has found in favor of the complainant. 42 U.S.C. § 6104(f); 45 C.F.R. § 90.50.

There is no indication from the Complaint that Plaintiff has satisfied either the notice or the exhaustion requirement. Both requirements are jurisdictional. 42 U.S.C. § 6104(e)(1) (interested person "shall" give notice before suit); *Wieker v. Mesa County Valley Sch. Dist.*

---

42 U.S.C. § 6104(e).

*#51*, No. 05-cv-806 WYD-CBS, 2007 WL 595629, *9 (D. Colo. Feb. 21, 2007) (holding that "federal court lacks subject matter jurisdiction over a suit brought pursuant to the Act if [the notice] prerequisite is not met."); 42 U.S.C. § 6104(e)(1) ("No action [under the Act] shall be brought...if administrative remedies have not been exhausted."); *see also Brownscombe v. Dept. of Campus Parking*, 203 F.Supp.2d 479, 483 (D.Md. 2002) (dismissing Age Discrimination Act claim under Rule 12(b)(6) for failure to allege notice and exhaustion of administrative remedies); *Rannels v. Hargrove*, 731 F.Supp. 1214, 1221 (E.D.Pa. 1990) ("The courts that have addressed the point have held that dismissal is the correct response to the failure to exhaust administrative remedies provided by [the Age Discrimination Act].")

The Court thus concludes that Plaintiff's claim under the Age Discrimination Act must be dismissed for failure to allege notice and exhaustion of administrative remedies. The dismissal will be without prejudice and Plaintiff shall be permitted leave to amend if she believes she can properly allege that these requirements have been met.

### D.   Individuals with Disabilities Education Act ("IDEA")

The title of the Complaint indicates that Plaintiff is seeking relief under the IDEA. [Doc. 1 at 1.] However, a claim under the IDEA appears foreclosed by the allegations in the Complaint.

The purpose of the IDEA is to ensure educational opportunities for "children with disabilities."  20 U.S.C. § 1400(d); *see also Bd. of Educ. of Oak Park & River Forest High Sch. Dist. 200 v. Ill. State Bd. of Educ.*, 79 F.3d 654, 655 (7th Cir. 1996) (stating that IDEA entitles disabled child to free public education tailored to his special needs until he turns 21).

Plaintiff's age is not stated in the Complaint, however, it appears beyond contradiction that she is an adult. She claims that Defendants discriminated against her on account of her advanced age [Doc. 1 at 10], that she has a granddaughter [Id. at 9], and that she desires college training [Id. at 8]. Taken together, these allegations indicate that Plaintiff is beyond the age at which the IDEA would provide relief. Accordingly, the IDEA claim must be dismissed.

### E.    Constitutional Claims

The Complaint is specific as to the statutory basis for the claims alleged, but does not reference any specific constitutional violations. Therefore, the Court construes Plaintiff's Complaint as attempting to allege only statutory claims, all of which have been addressed above. The Court does not construe Plaintiff's isolated reference to a violation of "constitutional rights, privileges or immunities" as attempting to assert constitutional claims in addition to the statutory claims. [Doc. 1 at 9.]

Even if Plaintiff were attempting to assert constitutional violations, no such claims have been properly alleged and would therefore have to be dismissed. Because section 1983 is not an independent source of substantive rights, but rather a mechanism for enforcing federal rights conferred elsewhere, the analysis of any purported federal civil rights claims necessarily begins by identifying the specific constitutional rights the Defendants are alleged to have violated. *Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 393–94 (1989)). Here, Plaintiff has not identified any specific constitutional rights she claims were violated. As opposed to the specific statutory claims

14

Plaintiff alleges and describes, her single reference to "constitutional rights, privileges or immunities" is not sufficient to put Defendants on notice as to the type of constitutional violation they are expected to defend against.  While Plaintiff's *pro se* pleading must be liberally construed, it is not the proper function of the district court to assume the role of advocate for the *pro se* litigant.  Accordingly, Defendants' Motion to Dismiss will be granted with respect to constitutional claims.

### F.    Sovereign Immunity

For the first time in their reply brief, Defendants assert that Plaintiff's ADA claim is barred by Eleventh Amendment sovereign immunity.  [Doc. 31 at 3–4.]  The affirmative defense of sovereign immunity was not alleged in their answers, nor raised in their motion to dismiss and incorporated memorandum.  [Docs. 9, 11, 17, 26.]  Thus, neither the Court nor the Plaintiff had any notice of the Eleventh Amendment defense prior to the reply brief.

The Court generally does not consider new legal arguments raised for the first time in the reply brief.  *See* Fed.R.Civ.P. 7(b) (requiring motions to "state with particularity the grounds" that the movant is relying on for relief); *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003) (stating that a trial court abuses its discretion if it considers new legal arguments or new evidence raised for the first time in a reply brief without permitting surreply).  It is unfair to the opposing party for the court to consider new issues submitted with a reply; it deprives the opposing party of a chance to respond and it deprives the court of the benefit of full briefing.  *Trujillo v. Bd. of Educ. of the Albuquerque Pub. Sch.*, Nos. Civ. 02-1146 JB/LFG, Civ. 03-1185 JB/LFG, 2007 WL 5231709, *5

15

(D.N.M. Aug. 24, 2007) (citing *Doctor John's, Inc. v. City of Roy*, No. 03cv00081, 2007 WL 1302757, *4 (D. Utah May 7, 2007)).

Nevertheless, the Court is reluctant to avoid addressing the issue of sovereign immunity altogether because this defense arguably implicates subject matter jurisdiction. *Harris v. Owens*, 264 F.3d 1282, 1288 (10th Cir. 2001) ("Once effectively raised, the Eleventh Amendment because a limitation on our subject-matter jurisdiction...").  On the other hand, our Supreme Court has held that the Eleventh Amendment does not destroy federal jurisdiction, but rather "grants the State a legal power to assert a sovereign immunity defense should it choose to do so." *Wis. Dept. of Corr. v. Schact*, 524 U.S. 381, 389 (1998). Supreme Court precedents treat the Eleventh Amendment as enacting sovereign immunity from suit, rather than a nonwaivable limit on the federal judiciary's subject matter jurisdiction. *Schact*, 524 U.S. at 394 (Kennedy, J., concurring).  In this respect, the defense of sovereign immunity bears a substantial similarity to the defense of lack of personal jurisdiction. *Schact*, 524 U.S. at 394 (Kennedy, J., concurring).  It can be waived if not properly asserted, and the court need not raise the defect on its own. *Schact*, 524 U.S. at 389.

The rule is that "*once effectively asserted* [Eleventh Amendment] immunity constitutes a bar to the exercise of federal subject matter jurisdiction." *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 559 (10th Cir. 2000) (emphasis in original).  The Court questions whether Eleventh Amendment immunity has been "effectively asserted" when it was neither alleged in Defendants' answers nor addressed in their motion.

Further complicating matters is the wholly inadequate nature of the briefing on the

16

Eleventh Amendment issue.  As support for their claim of sovereign immunity, Defendants

rely on *Thompson v. Colorado*, 278 F.3d 1020 (10th Cir. 2001)—a case that has been

expressly overruled.

> Our decision in *Thompson v. Colorado*, 278 F.3d at 1034, held that Title II of the
> ADA did not abrogate sovereign immunity under any context.  Thompson, however,
> is no longer good law.

*Guttman v. G.T.S. Khalsa*, 446 F.3d 1027, 1034 (10th Cir. 2006).

Two United States Supreme Court cases, *Tennessee v. Lane*[3] and *United States v.

Georgia*[4], substantially altered the manner in which courts address a sovereign immunity

defense to claims under Title II.  *Guttman*, 446 F.3d at 1034.  "To abrogate sovereign

immunity, Congress must unequivocally express its intent to abrogate and it must act

pursuant to a valid grant of constitutional authority."  *Guttman*, 446 F.3d at 1034 n.4 (citing

*Tennessee v. Lane*, 541 U.S. 509, 517 (2004)).  Congress clearly expressed its intent to

abrogate sovereign immunity when it passed the ADA.  *Guttman*, 446 F.3d at 1034 n.4

(citing *Lane*, 541 U.S. at 517).  The ADA specifically provides:  "A State shall not be

immune under the eleventh amendment to the Constitution of the United States from an

action in Federal or State court of competent jurisdiction for a violation of this chapter."  42

U.S.C. § 12202.  The key question is whether the Congressional attempt to abrogate

sovereign immunity was valid.  *Guttman*, 446 F.3d at 1034 n.4.

Prior to *Lane* and *Georgia*, it was held in this Circuit that "Title II is not a valid

---

[3]541 U.S. 509 (2004)

[4]546 U.S. 151 (2006)

abrogation of the states' Eleventh Amendment immunity" in any context. *Thompson*, 278 F.3d at 1034. After the Supreme Court's decisions in *Lane* and *Georgia*, however, "Title II validly abrogates sovereign immunity as to (1) actual violations of the Constitution and (2) at least some classes of cases that do not facially violate the Constitution but are prohibited to 'prevent and deter unconstitutional conduct.'" *Guttman*, 446 F.3d at 1034 (quoting *Lane*, 541 U.S. at 518). With respect to the second category of Title II lawsuits, in some situations abrogation can be a valid exercise of Congress's "prophylactic" enforcement powers under Section 5 of the Fourteenth Amendment. *Georgia*, 546 U.S. at 158–59.

In *Georgia*, the Supreme Court "explained the procedure by which courts should address Title II cases brought against states." *Guttman*, 446 F.3d at 1035. The "procedural roadmap" laid out by the Supreme Court consists of three steps that the district courts must apply to determine Eleventh Amendment immunity claims on a claim-by-claim basis. *Guttman*, 446 F.3d at 1035. First, the court determines which aspects of the State's alleged conduct violated Title II; second, the court determines to what extent such conduct also violates the Fourteenth Amendment; and third, insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, the court determines whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid. *Guttman*, 446 F.3d at 1035 (citing *Georgia*, 554 U.S. at 159).

Congress's ability to enact "prophylactic" legislation must exhibit "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Klingler v. Dir., Dept. of Revenue, State of Mo.*, 455 F.3d 888, 894 (10th Cir. 2006)

(quoting *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997) (quotation marks omitted)).

Thus, in determining at the third step whether the purported abrogation was valid, courts

must refer to the Supreme Court case of *City of Boerne v. Flores*, which itself provides a

three-step inquiry. *Klingler*, 455 F.3d at 894 (citing *City of Boerne*, 521 U.S. at 520).  To

determine whether Congress met the *City of Boerne* requirement, courts first "identify the

constitutional right or rights that Congress sought to enforce when it enacted the law being

reviewed." *Klingler*, 455 F.3d at 894 (quoting *Lane*, 541 U.S. at 522) (quotation marks

omitted).  It is then decided "whether Congress identified a history and pattern [of]

unconstitutional conduct by the states." *Klingler*, 455 F.3d at 894 (quoting *Bd. of Trs. of

Univ. of Ala. v. Garrett*, 531 U.S. 356, 368 (2001) (quotation marks omitted)).  If so, the final

step in the *City of Boerne* analysis is to "determine whether the abrogation constitutes a

proportionate response to the constitutional violation." *Klingler*, 455 F.3d at 894 (citing *Fla.

Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 646 (1999)).

The Tenth Circuit emphasized that the steps set forth in *Georgia* are a "wise"

procedural rule. *Guttman*, 446 F.3d at 1036.  The district court must know the specifics of

the claim at issue before it can determine whether Title II abrogated sovereign immunity for

that specific suit. *Guttman*, 446 F.3d at 1036.  Furthermore, the court should not determine

whether Title II abrogates sovereign immunity before determining that a plaintiff actually

alleged a Title II violation. *Guttman*, 446 F.3d at 1036.

In this case, Defendants did not raise the Eleventh Amendment defense until the reply

brief, and even then, failed to address the *Georgia* and *City of Boerne* analyses.  Their

treatment of the issue consists of a mere three sentences.  [Doc. 31 at 3.]  Thus, though the Court has determined that Plaintiff's Complaint adequately alleges a Title II violation, at this early stage of the proceedings, and without benefit of proper briefing, case citations, and analysis, it would be premature for the Court to determine the Eleventh Amendment issue.

The Court recognizes that deferring a ruling on sovereign immunity may require Defendants to proceed on the ADA claim when there may be a valid jurisdictional defense. However, this is due in large part to Defendants' own failure to properly raise and brief the issue.  Furthermore, though Eleventh Amendment immunity is meant to protect the state from being subject to suit at all, "the *Georgia* protocol may require the State to defend litigation before obtaining a ruling on immunity."  *Buchanan v. Maine*, 469 F.3d 158, 172 n.8 (1st Cir. 2006).  This is so

> ...because of both the generous notice pleading rules in federal practice and the rule that no greater pleading requirements are imposed on civil rights plaintiffs....As a result, there may need to be further specificity about the precise nature of the plaintiff's claims and some discovery after the suit begins.

*Buchanan*, 469 F.3d at 172 n.8 (citations omitted); *cf. Klingler*, 455 F.3d at 892 (holding that Court of Appeals could apply *Georgia* test where it had the benefit of a proper complaint and an extensive summary judgment record).

Accordingly, Defendants' Motion to Dismiss the ADA claim on sovereign immunity grounds will be denied without prejudice.  Defendants may raise the defense through subsequent motion practice, but any argument must be supported by a proper record, case citations, and analysis.

### G.    Compliance with Fed.R.Civ.P 8

A complaint filed in federal court should contain "a short and plain statement of the grounds upon which the court's jurisdiction depends." Fed.R.Civ.P. 8(a)(1).  As Defendants point out, the Complaint does not include a statement of jurisdiction.  Nevertheless, it is immediately clear from the first page of the Complaint, as well as from the nature of the allegations, that Plaintiff asserts violations of several federal anti-discrimination statutes. Defendants have not moved to dismiss for lack of subject matter jurisdiction and, except for the as yet undetermined sovereign immunity issue, do not contend that federal jurisdiction is lacking.  Where the essential elements of at least two federal causes of action are adequately alleged, dismissal on the grounds that the Complaint lacks a jurisdictional statement would not "do substantial justice."  Accordingly, the Court declines to dismiss the Complaint on that basis.

Defendants also argue that the Complaint violates Rule 8's "short and plain" requirement, is "incoherent," and includes allegations that are "irrelevant" to her claims of discrimination and retaliation.  Defendants also complain about the lack of paragraph numbers in the Complaint.  In the Court's opinion, Defendants' description of the Complaint as a "hodgepodge of narrative statements" is not an entirely fair characterization.  Though paragraph numbers are desirable, the absence of paragraph numbers does not render Plaintiff's Complaint "incoherent."  The Complaint includes a chronology in the form of three "Attachments," lists specific dates, describes with some particularity events and individuals with whom Plaintiff claims she had contact, and identifies several causes of

action complete with statutory references.  While the Complaint's readability would be improved by use of appropriate punctuation, it is a modest twelve pages in length, including the three "Attachments," and has appropriate headings.  The Court concludes that the Complaint meets the requirements of Rule 8 and is sufficient to put Defendants on notice of the claims against them.  Defendants' request to dismiss the Complaint for purported violations of Rule 8 is without merit.

### H.      Failure to Amend the Complaint

Defendants also move to dismiss the Complaint on the grounds that Plaintiff failed to take advantage of an opportunity to amend.  Specifically, they assert that Plaintiff requested and was granted leave to amend her Complaint to correct the alleged deficiencies, but failed to do so.  The Honorable Leslie C. Smith, United States Magistrate Judge, did indeed grant Plaintiff permission to file an amended complaint.  [Doc. 25.]  The amended complaint, if any, was due September 17, 2007.  [Id.]  Plaintiff did not file an amended complaint.

Plaintiff's failure to amend does not require dismissal of the Complaint.  Judge Smith did not order Plaintiff to file an amended complaint.  Rather, Plaintiff was granted leave to amend by September 17, 2007.  Amendment was discretionary with the Plaintiff.  Thus, her failure to amend is not grounds for dismissal.

### I.      Plaintiff's Request for an Extension

On October 23, 2007, Plaintiff requested an extension to November 12, 2007 to respond to Defendants' Motion to Dismiss.  [Doc. 29.]  Defendant filed her response on

22

November 1, 2007, approximately two weeks after it was due under the Local Rules.  [Doc. 30.]  The Court finds that there is no reason that Plaintiff's request to file an extension should not be granted.

## IV.    CONCLUSION

For the foregoing reasons, the Court determines that the Complaint adequately alleges claims under the Americans with Disabilities Act and the Rehabilitation Act.  With respect to the Age Discrimination Act, the Complaint fails to allege notice and exhaustion of remedies, which are jurisdictional prerequisites for a claim.  The Complaint also fails to allege a claim for relief under the Individuals with Disabilities Education Act or under the United States Constitution.  The Court concludes that the record and briefing are insufficient at this time to permit a ruling on Defendants' claim that the ADA cause of action is barred by the Eleventh Amendment.

**IT IS, THEREFORE, ORDERED** that *Defendants' Motion and Incorporated Memorandum to Dismiss* [Doc. 26] is **GRANTED in part and DENIED in part.**  The Motion is **denied** as to Plaintiff's claims under the Americans with Disabilities Act and the Rehabilitation Act.  The Motion is **granted** as to claims under the Age Discrimination Act, the Individuals with Disabilities Education Act, and any claims under the United States Constitution.

**IT IS FURTHER ORDERED** that the Age Discrimination Act claim is **dismissed without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff shall have **leave to amend** her

Complaint to the extent that she is able to properly allege that she has satisfied the jurisdictional prerequisites for bringing a claim under the Age Discrimination Act.  Any amended complaint Plaintiff wishes to file is due by October 20, 2008.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss the Americans with Disabilities Act claim on the grounds that it is barred by the Eleventh Amendment is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's "Request for Extension for Response" [Doc. 29] is **GRANTED**.

**SO ORDERED** this 25th day of September 2008**,** in Albuquerque, New Mexico.


**M. CHRISTINA ARMIJO**
United States District Judge

24