IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED

09 MAY -4 PH 2:25

CLERK · LAS CRUCES

ELIZABETH MARIE ALEXANDER,

> Plaintiff,

vs.                                                    CIV 07-0230 MCA/KBM

STATE OF NEW MEXICO VOCATIONAL
REHABILITATION, GARY BEENE, SHIRLEY
GONZALES, LILIY VEGA & THAD BROWN,

> Defendants.

## MEMORANDUM OPINION AND ORDER
## ON SEVERAL MOTIONS AND ISSUES

This case had a long history prior to being assigned to me, and a summary bears repeating before moving on to the most recent developments. I held a hearing on April 16, 2009, and made a transcript of it and other matters. *See April 16, 2009 KBM Hearing Transcript* ("Transcript")(attached to this Order).

For the reasons below, I deny Plaintiff's pending motions, schedule a Rule 16 initial scheduling conference at which Plaintiff must appear in person, and will at that conference set a Court-monitored deposition of Plaintiff. Further, I advise Plaintiff of the consequences should she continue to fail to prosecute this case. I

also direct the Clerk to correct the spelling of a defendant's name on the docket based on an oral representation by defense counsel.

## I.  Background

Plaintiff Elizabeth Alexander initiated this action *pro se* in March 2007, seeking to hold Defendants liable for discrimination based on her disabling brain injury under several different theories.  *See Doc. 1.*  Originally the case was assigned to Magistrate Judge Leslie C. Smith.  At his initial Rule 16 conference, he did not set any discovery deadlines.  Instead, he ruled on various non-dispositive motions, denied Plaintiff's motion for appointment of counsel, and set a settlement conference in October 2007.   The settlement conference concluded after less than two hours without any party making an offer.  *See Doc. 27.*

Thereafter, presiding District Judge Armijo ruled on Defendants' pending motion to dismiss.  In September 2008, she held that Plaintiff's claims could go forward under the Americans With Disabilities Act ("ADA") and the Rehabilitation Act ("RA").  *Doc. 34* at 9, 10.   As to Defendants' argument that the Eleventh Amendment barred Plaintiff's ADA claim, she denied the motion without prejudice and held that "Defendants may raise the defense through subsequent [properly supported] motion practice."  *Id.* at 20.  She also dismissed

2

Plaintiff's claim brought pursuant to the Age Discrimination Act, 42 U.S.C.

§ 6101-6107, and held that "Plaintiff shall be permitted leave to amend if she

believes she can properly allege that [the notice and exhaustion of administrative

remedies] requirements have been met." *Id.* at 13. Finally, she dismissed Plaintiff's

claims under the Individuals with Disabilities Education Act ("IDEA") and the

United States Constitution. *Id.* at 14, 15.

Upon Magistrate Judge Smith's retirement, the case was assigned to me to

set another Rule 16 conference, set discovery deadlines, and resume handling

discovery and non-dispositive motions. *See Docs. 35, 37.* I originally set a Rule 16

conference for December 2, 2008. *See Doc. 39.* But because Plaintiff appealed

District Judge Armijo's ruling, *see Doc. 41*, I vacated that conference and also

ordered Plaintiff to provide the Court with her correct telephone number and

address because defense counsel had been unable to contact her. *See Docs. 44-46.*

The Tenth Circuit panel found that it was without jurisdiction to hear the

appeal and indicated that the appeal would be dismissed if Ms. Alexander took no

action within 14 days of its decision. I then reset the Rule 16 conference, by

telephone, for January 6, 2009. *See docket entry 12/15/08* (inadvertently entered

without a docket number). That conference did not take place, however, because

of Plaintiff's vague motion for continuance that was initially referred to the Tenth

Circuit. *See Docs. 47-50.* After those proceedings at the Tenth Circuit concluded at the end of February 2009, I found her motion for a continuance moot, and again reset the Rule 16 conference with plenty of advance notice for April 9, 2009. *See Docs. 51-55.*

According to an incomplete Joint Status Report and Provisional Discovery Plan ("JSR") filed by Defendants on April 1, 2009, Ms. Alexander refused to participate in the "meet and confer" as I directed in my initial scheduling order ("ISO") and failed to respond with Plaintiff's portion of the JSR as required. *See Doc. 58.* Instead of complying with my ISO, Ms. Alexander filed a document entitled "Motion of Right of Intervention" on April 1, 2009 which is, in fact, yet another motion for continuance. *Doc. 57.* It provides in full:

<u>Request For Medical Intervention</u>

> Fed. statute 24(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

> My Doctor has medically accessed [sic] me and said I am not able to continue representing myself as a pro se litigant; the duress of represent myself in federal court has contributed to high glucose levels that have been in an excess of 400-475, macular migraines and difficulty with my memory and the visual changes that

have decreased my ability to read and research, these life
threatening symptoms including exacerbating my other
medical conditions, it is extremely difficult to not
experience these as described by my doctor, I have found
a agency that can take over for me, enclosed is their
letter:

I ask the court to make no decisions on the merits or
require no settlement of the complaints (sic) allegations.
Their legal staff said they will need 60 days to re-file and
fix the things I didn't do correctly.

*Doc. 57* at 1.

Clearly, however, Plaintiff misunderstands the import of the letter attached

to that motion, which is from the United States Department of Education ("DOE")

in Denver.  The DOE has no interest in representing her in the matter before this

Court, nor is it even processing the complaint she sent to that agency.  The letter

reveals that Plaintiff would not return the numerous telephone calls the DOE made

to her, so it wrote to inform her that the agency would not pursue the complaint

because it duplicates the allegations in this federal lawsuit.  As to the letter's

reference to sixty days, DOE informed her that sixty days ***after*** these federal court

proceedings conclude, she can refile her complaint with DOE but only if "there has

been no decision on the merits or settlement of the complaint allegations," and

noted that a dismissal "with prejudice is considered a decision on the merits."

*Doc. 57* at 4.

Ms. Torres' response to the motion sets forth Defendants' opposition to any further continuance:

> This Court has tried on three occasions to schedule a Rule 16 scheduling conference, and on both occasions, the Court vacated the conferences. Plaintiff now seeks a third stay. Filing endless motions seeking 60-day stays is unfair to Defendants, who just want to learn the basis for Plaintiff's claims.

*Doc. 59* at 4. I agree that no further continuances should be permitted on the unsubstantiated record now before me, and will deny the "motion for intervention".

Given Ms. Alexander's unwillingness to cooperate in a meet and confer and the preparation of the JSR, at some point Defendants noticed Plaintiff's deposition for some date in March. Upon receiving the notice, Plaintiff telephoned Ms. Torres' office and "advised that due to her religious beliefs, she could not testify under oath." *Doc. 58* at 6. Plaintiff considers herself "a Pastor and [has] been instructed by my highest religious authority to not take any type of oath." *Doc. 63* at 1.[1] Defendant's portion of the incomplete JSR indicates that "Plaintiff's

---

[1] Plaintiff's assertion of a religious prohibition against taking oaths is contradicted by documents in the court record indicating that she has done so on at least one other occasion. *Compare, e.g., Doc. 1* at 12 (refusal to sign under penalty of perjury), *with Doc. 3* at 1 (declaring "under oath [that] the following statement regarding my financial, residential, and employment status.").

Nevertheless, the Federal statutes and rules recognize this issue and accommodate it by allowing the person to make a "solemn affirmation" that they will be truthful. See FED. R. CIV. P. 43(b) ("Affirmation Instead of an Oath. When these rules require an oath, a solemn

deposition was vacated based upon that representation." *Doc. 58* at 6.  The

submitted JSR also requested that I order Plaintiff to submit to a deposition on

April 16, 2009.  No formal motion to that effect was filed, however. *Id.*  Instead,

the February 27, 2009 letter from defense counsel to Plaintiff that enclosed the

JSR, informed Plaintiff that "[u]nless I hear from you to the contrary . . . I will

presume that you will be able to meet on April 16 for your deposition.  We can

begin your deposition at 9:00 a.m." *See Doc. 58-2* at 2.

I then moved the April 9th Rule 16 initial scheduling conference to the

afternoon of April 16th and made it an in-person, rather than telephonic

conference.  *See docket entry 4/8/09* (inadvertently entered without a docket

number).  I made this change so that it would be more convenient for Plaintiff – if

---

affirmation suffices."); FED. R. EVID. 603 (Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so."); *see also* 28 U.S.C. § 1746 (Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:  (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).  (Signature)".  (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".).

7

the deposition was held at the courthouse, she could attend the deposition in the morning and then be available for the afternoon conference. *C.f. Transcript* at 3-4. Although the docket does not reflect it, that same day – April 8th – my staff left messages for Plaintiff and Ms. Torres, informing them that the April 16th deposition would take place at the Courthouse rather than the court reporter's offices. Evidently that same day Ms. Torres sent Plaintiff an amended notice of deposition. *See Doc. 61.*

On April 15th, the day before the deposition and conference, Plaintiff called my staff to say that she could not make it to the deposition and conference because her wheelchair was broken. My administrative assistant asked Ms. Alexander if she had spoken with opposing counsel Ms. Torres, and Plaintiff indicated that she had not, but she intended to. Staff then called Ms. Torres' office to alert her to the *ex parte* conversation, and spoke with her assistant. The assistant indicated that Ms. Torres was out of the office and on the way to Las Cruces, but that Ms. Alexander had in fact called and left the same information about the wheelchair problem. As Ms. Torres later indicated:

> my office received a phone call [on April 15[th]] at
> approximately 1:30 in the afternoon, Ms. Alexander
> indicated that her wheelchair broke. I instructed my
> office to call her back and say we will accommodate her
> in any way. We will go to her home for her deposition,

that my client has expended a significant amount of
resources to bring me down her for this deposition and for
the hearing today.

She then told my office in response to that[,] that
she did not want her deposition taken and that she would
not take an oath.

And then I called her back, and I explained to her
that she could – she didn't have to take an oath and that
under the Rules of Evidence, she could take an
affirmation to tell the truth, and I would accommodate
her in any way. Then the phone went dead. I don't
know if she hung up on me or if the line just went dead. I
called back and reiterated the same thing to her.

She mentioned something about a different ZIP
code.

*Transcript, Appendix* at 5.[2]

---

[2] Plaintiff's version of the conversation does not mention talking to my staff
about a deposition, only the hearing, and differs from Ms. Torres about their
discussion:

I called the court on April 15, 2009 I was unable to
resolve the matter and attend the 1:30 hearing. On April
the 15, 2009 when I called to ask for permission to reset
the hearing  I was ask had I called Ms. Torres yet, I had
not, when I called her office I was told Ms. Torres was
already headed for Las Cruces, her assistant gave he my
phone number, and Ms. Torres called me telling me,
about the expense of her deposition and that I already
knew about said deposition she was unwilling to her, that
her error of sending it to the wrong post office zip code
had further delayed me receiving the notice, I had gotten
it on April 15, 2009, she was adamant that I was lying
and that I would attend. [W]hen I attempted to explain
my religious objection and that I wouldn't take any type
of oath, her angry outburst slandering me by calling me a

Ms. Torres immediately informed my staff of that conversation and being

unable to reconnect with Plaintiff.  Based upon that representation, I instructed my

staff to call Ms. Alexander, but she did not return any of the calls.  *See Transcript,*

*Appendix* at 2.  Frustrated by that turn of events, I **_personally_** placed a call to

Plaintiff and left this message:

> Mrs. Alexander, this is Karen Molzen.  I'm the judge
> assigned to your case.  If – if you can hear me right now,
> I'd appreciate it if you'd pick up because I have a very
> heavy docket today, and I really need to speak with you.
> It is April the 15th, and the time is 2:35.  Please call my
> office as soon as you're available. . . .  I need to get you
> and Ms. Torres on the phone so that we can make sure
> we're on the same page about what's going to be
> happening tomorrow.  My number here at the courthouse
> is 528-1480.  And my assistant's name is Theresa.  I
> believe you have spoken to her on several occasions.
> Thank you for your prompt attention.

*Id.* at 2-3.  I received no response.

The next morning, Plaintiff did not appear for her deposition.  On the

-----------------------

> liar, and repeating I had already known of the deposition!
> Caused me to end the call with her and after two more
> calls I turned off the phone.

*Doc.* 63 at 1 (entitled "Motion to Object to Deposition and Request for Summary
Judgment").

record, I set forth the events outlined above and directed my staff to again call

Plaintiff. She did not answer the telephone, and my administrative assistant left

the following message on her answering machine:

> Hi, Ms. Alexander. This is Theresa calling from Judge
> Molzen's chambers. It is about 9:47 in the morning on
> the 16th of April. We just – you just missed your
> deposition. However, Judge Molzen would like to go
> ahead and hold your Rule 16 hearing this afternoon at
> 1:30. If you need us to show up at your house, that would
> be fine. The judge is available to do that. But you need
> to call me back and let me know so that we can have the
> court reporter and Ms. Torres and her clients meet us
> there as well. Hope to hear from you soon. The phone
> number here is 528-1480. Thank you. Bye-bye.

*Transcript* at 5. Again we received no reply. When Plaintiff failed to appear for the

1:30 p.m. Rule 16 conference, I held the conference with only Ms. Torres present

and made a record with the court reporter which is attached to this opinion. *See*

*Transcript* at 3-14.

Later that afternoon while I was in another hearing, Plaintiff called my

chambers and left this message at 2:36 p.m.:

> This is Elizabeth Alexander. Beall & Biehler sent the
> letter to 88001 instead of 88004. So because of that
> delay, I didn't receive it until today because it has to go to
> 88001, and then they have to send it to me. So I guess
> that's – that's all I have to say. I don't know if it's going
> to be rescheduled or if I'm going to be held in contempt
> of court. So thank you. Bye.

*Id.* at 4.  I had indeed contemplated entering an order to show cause why sanctions should not be imposed, *see Transcript* at 13-14, but because of prior docket and out-of-town travel commitments, I was unable to enter an order immediately.

The day after the conference, Ms. Alexander appeared in person at the courthouse and told the CSO's/Marshal that her wheelchair motor was broken and she had tried to call the Court on Saturday.  *See Docket Staff Note entered 4/20/09* (accessible by the Court only).  Our message machine did not reflect that she left any message.  She followed up two days later with the motion "objecting" to a deposition and requesting "summary judgment" for violation of her "civil rights" for not receiving at least 10 days notice for a deposition.  *Id.* at 2.

Plaintiff incorrectly believes that it was Ms. Torres who requested that the Court reset the Rule 16 conference date and locate the deposition at the courthouse on April 16, 2009 "so she could depose me in less than 7 days time."  In fact, it was the Court on its own which determined that those changes would best accommodate Ms. Alexander's concerns.  At the courthouse, I could explain to Ms. Alexander that she could be deposed without violating any heartfelt religious objections to oaths.  By scheduling the deposition and an in person conference on the same day and same location, I felt that Ms. Alexander would under less emotional and physical stress.

# II.  Analysis

## A.  *Plaintiff's Motion To Intervene Is Denied*

As discussed above, the motion for intervention is, in essence, just another request for continuance.  Defendants quickly responded to Plaintiff's motion on April 6th.  Under this Court's Local Rules for civil cases, Plaintiff's reply was therefore due on Monday, April 20th – after the deposition and conference were scheduled.  *See* D.N.M.LR-Civ. 7.4(a).  No reply has been filed, and Plaintiff's latest motion reveals that she is waiting for a ruling on the motion.

Plaintiff is on notice that as the party who filed the motion, under our district's Local Rules, she was required to file a "notice certifying that the motion is ready for decision and identifying the motion and all related filings by date of filing and docket number."  *Id.*  If she decided not to file a reply, Plaintiff should have filed a notice of completion after she received the Defendants' response, so that this Court could have ruled before the deposition and hearing.

I therefore now consider the motion to intervene ready for ruling, and I will deny it.  As discussed above, Plaintiff is mistaken that the Department of Education will be prosecuting anything on her behalf.  Thus, that agency will not be "intervening" in this matter.  Moreover, Plaintiff's early motion for appointment

13

of counsel was denied, and her filings over the more than one year afterward reveal

that she is capable of representing herself.  No further delays are justified.

### B.  *Plaintiff's Objection To The Deposition Has No Basis*

Also as explained above, any religious objections to taking an oath do not

allow Plaintiff to avoid her deposition.  Instead, she simply will affirm that she will

tell the truth under penalty of perjury.  Accordingly, I deny Plaintiff's "objection" to

the deposition. *Doc. 63.*

### C.  *Plaintiff's Explanations*

Apparently all correspondence from defense counsel to Plaintiff has been

sent using the wrong zip code.  As indicated on the court docket sheet, Plaintiff's

correct zip code is 88004, and the correspondence (including the notices of

depositions) was sent to 88001.  Plaintiff contends the incorrect zip code caused

the notice of deposition to arrive at her home until the April 16th, the day the

deposition was scheduled to take place. *See Transcript, Appendix* at 4.  She has not

disputed that she received Ms. Torres' February 27, 2009 letter which proposed

April 16th as the date for Plaintiff's deposition and that Defendants "presumed" it

would fit into Ms. Alexander's schedule unless she was otherwise notified.  In short,

Ms. Alexander clearly understood when the deposition was expected to take place

even if there was a delay caused by the incorrect zip code.

She also clearly understood that I had ordered the Rule 16 initial scheduling

conference to be held in-person and knew the time and date.  Plaintiff claims that

she could not make it to the courthouse because her wheelchair was broken.  She

does not explain why she failed to take up both my offer and that of Ms. Torres to

hold the deposition and conference at Plaintiff's home for her convenience.  She

provides no justification for failing to return my phone call or those of my staff.

Simply put, I am not inclined to find good cause for these failures by Plaintiff.

### C.  Plaintiff Must Prosecute This Case And Abide By Court Rules And Orders, Or I Will Recommend That Her Action Be Dismissed Without Further Notice

Neither her status as a *pro-se* litigant or her asserted "brain injury" relieve

Plaintiff of the obligation of following this Court's orders and rules.

> "Although we construe [Mr. Young's] pleadings liberally
> because he is a pro se litigant, he nevertheless must follow
> the same [local district court] rules of procedure that
> govern other litigants." *Green v. Dorrell*, 969 F.2d 915,
> 917 (10th Cir. 1992); *see also AdvantEdge Bus. Group, L.L.
> C. v. Thomas E. Mestmaker & Assocs.*, 552 F.3d 1233,
> 1236 (10th Cir. 2009) ("A district court undoubtably has
> discretion to sanction a party for failing . . . to comply
> with local . . . procedural rules.") (internal quotation
> marks omitted).

*Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

Indeed,

Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure

15

> permits a court to issue "[a]n order . . . dismissing the
> action" "[i]f a party . . . fails to obey an order to provide
> or permit discovery." Determination of the correct
> sanction for a discovery violation is a fact-specific inquiry
> that the district court is best qualified to make.
> Therefore, we review the district court's decision to
> dismiss for discovery violations under an abuse of
> discretion standard.

*Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992).

Binding precedent precludes me from imposing such a severe sanction at this

juncture because of the notice requirements. "Particularly in cases in which a party

appears pro se, the court should carefully assess whether it might appropriately

impose some sanction other than dismissal, so that the party does not unknowingly

lose its right of access to the courts because of a technical violation." *Id.* at n.3.

The case of *Cooks v. Cargill, Inc.*, 165 Fed. App'x 659 (10th Cir. 2006),

involved a *pro se* litigant who claimed employment discrimination based on his race

and a disability. He failed to provide opposing counsel with disclosures, failed to

help opposing counsel prepare a proposed scheduling order, did not show up for a

conference, ignored requests for documents, failed to abide by local rules and

otherwise dragged his heals in litigating the suit. Although this litigant claimed

"that he did not understand the judicial process or what was expected of him" and

had his daughter helping him, that did not excuse him from complying with local

rules and his case was eventually dismissed.  A copy of the case is attached.

Like the litigant in *Cooks v. Cargill*, Plaintiff has been uncooperative and appears unwilling to move this case forward.  Ms. Alexander is on notice that this Court has the inherent power to impose a variety of sanctions on litigants in order to, among other things, regulate its docket and promote judicial efficiency. *Martinez v. Internal Revenue Service*, 744 F.2d 71, 73 (10th Cir. 1984).  One such sanction within the discretion of the Court is to dismiss an action for want of prosecution.  *E.g., Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642-43 (1976); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962); *see also Costello v. United States*, 365 U.S. 265, 286-87 (1961) (district court may dismiss *sua sponte* for failure to comply with order of court); *United States ex rel. Jimenez v. Health Net, Inc.*, 400 F.3d 853, 855 ("dismissal is an appropriate disposition against a party who disregards court orders and fails to proceed as required by court rules."). "Dismissal . . . is a strong sanction to be sure, but it is no trifling matter for [litigants] to abuse our office by disappearing and failing to meet our deadlines. The federal courts are not a playground for the petulant or absent-minded; our rules and orders exist, in part, to ensure that the administration of justice occurs in a manner that most efficiently utilizes limited judicial resources." *United States ex rel. Jimenez v. Health Net, Inc.*, 400 F.3d 853, 856 (10th Cir. 2005).

Plaintiff will not be permitted to delay this matter further or to ignore Court orders and rules. She is expected to promptly return telephone calls from opposing counsel and the Court. In the interest of moving this case along, I will hold the Rule 16 initial scheduling conference as soon as practical. Ms. Alexander will be required to appear in person, and Ms. Torres can appear by telephone. If for some reason she cannot come to the courthouse, Plaintiff is to immediately notify my chambers and I will conduct the conference at her home or any other convenient location for her, if needed. Ms. Alexander is directed to provide to defense counsel at least one week prior to that conference with her initial disclosures including any documents that are relevant to the case as required by Rule 26 and her filled out portion of the JSR.

At that conference we will select a date and location for the Plaintiff's deposition to be taken. Unless otherwise notified, the Rule 16 initial scheduling conference will be held in my courtroom on the third floor of the Federal Courthouse in Las Cruces, New Mexico. If either Plaintiff or Ms. Torres cannot be available for the Rule 16 conference scheduled below, they are to immediately inform the Court in writing and propose an alternative date and time.

As to Plaintiff's deposition, I will make myself available to resolve any issues that arise during Plaintiff's deposition and will monitor and/or facilitate the

18

deposition if need be.  I expect Plaintiff and Ms. Torres to cooperate, however, and

my involvement minimal.

Wherefore,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1. Plaintiff's motions for "intervention" and "objection" to deposition, *Docs. 57, 63,* are DENIED;

2. The Rule 16 Initial Scheduling Conference will be held on Thursday, May 21, 2009 at 10:00 a.m. on the third floor of the Federal Courthouse in Las Cruces, New Mexico in Courtroom 2.  Ms. Alexander shall appear in person and Ms. Torres may attend by telephone.  Plaintiff shall have completed the obligations described on page 18 of this Order no less that one week prior to the conference.

3. At the conference, we will set a time and place for the taking of Plaintiff's depositions the parties are to have their calendars available at that time. Among other things, I will also set discovery and motions deadlines, and discuss the need, if any, for sanctions for past failures to engage in discovery to prevent future abuses;

7. Because of defense counsel's notice at the April 16, 2009 hearing that one of her clients' names is not spelled correctly, the Clerk forthwith change "Liliy Vega" to "Lillie Vega;" and

8. **Plaintiff is also hereby notified that failure to respond to comply with any aspect of this Order or Local Rules may result in sanctions including assessment of attorney fees or dismissal without further notice.**

_____
KAREN B. MOLZEN
UNITED STATES MAGISTRATE JUDGE

Attachments:
Transcript & Appendix
Exhibits To Transcript & Appendix
*Cooks v. Cargill, Inc.*, 165 Fed. App'x 659 (10th Cir. 2006)